# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| Stephen H. Sweitzer, | : | |
| Plaintiff, | : | Case No.  2:05-cv-650 |
| v. | : | Judge Smith |
| American Express Centurion Bank, *et al.*, | : | Magistrate Judge Abel |
| | : | |
| Defendants. | | |

## <u>ORDER</u>

Plaintiff Stephen H. Sweitzer brought this suit alleging that American Express Centurion Bank violated the Fair Credit Reporting Act and Ohio law when it continued to report misleading credit card debt information to three credit reporting agencies after he disputed the debts. The Court concludes that the claims are barred by the FCRA for the reasons set out below.

This matter is before the Court on Defendant American Express Centurion Bank's motion for summary judgment (Doc. 75), Plaintiff Stephen H. Sweitzer's response in opposition (Doc. 80), and Defendant American Express Centurion Bank's reply (Doc. 89). This matter is also before the Court on Plaintiff's co-administrators' motion to substitute parties (Doc. 94), Defendant American Express Centurion Bank's motion in opposition (Doc. 95), and the co-administrators' reply and amended reply to Defendant's response (Docs. 96, 97).  For the reasons below,

Defendant American Express Centurion Bank's motion for summary judgment is GRANTED.  The co-administrators' motion to substitute parties is MOOT. Plaintiff's remaining claim for defamation was extinguished on his death as conceded by the co-administrators.

## A. <u>Summary</u>

Plaintiff Stephen H. Sweitzer alleged that he was the victim of identity theft when Brad Bender, an acquaintance and former business partner, made unauthorized charges on his credit card account.  In 2002, Sweitzer disputed debt information American Express Centurion Bank ("Amex") communicated to Trans Union, Experian, and Equifax. Plaintiff maintains that Amex did not timely correct the disputed information. Claims are pleaded that Amex violated the Fair Credit Reporting Act by furnishing incomplete and inaccurate data to credit reporting agencies and that Amex failed to timely investigate and report the results of its investigation to the credit reporting agencies. The Complaint also pleads Ohio law estoppel and negligence claims. Amex is entitled to summary judgment on these claims because Sweitzer has offered no evidence he relied on promises Amex made to him and because he offered no evidence to support the negligence claim pleaded in the Complaint.

**B.**     **Background**

On May 20, 2005, Plaintiff brought suit against Defendants in the Franklin County Court of Common Pleas, Ohio. (Doc. 1, Ex. A.) Defendant Equifax Inc. removed the action to this Court. (Doc. 1.) Subsequently, Plaintiff filed an Amended Complaint to which Defendants responded. (Docs. 10, 15-18.) Plaintiff's Amended Complaint alleges conversion, violation of the Fair Credit Reporting Act, negligence, defamation, and promissory estoppel. (Doc. 10, pp. 12-21.) Defendants United Recovery Systems, LP, Experian Information Solutions, Inc., Equifax, Inc., and Trans Union, LLC were dismissed. (Docs. 10, 32, 40, 41.) In addition, the Court entered judgment against Defendant Brad Bender. (Doc. 44.) American Express Centurion Bank ("Amex") remains a party to the action.

Plaintiff's claims against Amex stem from a series of interactions involving Plaintiff Stephen Sweitzer, Brad Bender, Amex, and the credit reporting Agencies ("Experian," "Equifax," and "Trans Union"). Plaintiff's Amended Complaint alleges that Defendant Brad Bender stole his identity and opened at least three credit card accounts, including two accounts with Amex. (Doc. 10, p. 6, ¶ 21, pp. 12-13; see also Doc. 77, pp. 158-159.) The two Amex accounts are 3722-699477-*****  (hereinafter the "3722-699" account) and 3727-107803-*****  (hereinafter the "3727-107 " account). (Doc. 1, Complaint, Ex. Q, p. 2.) The two accounts were opened in January 2000 in Stephen Sweitzer's name with Bender as a supplemental cardholder. (Doc. 77, Dep. Veronica

3

M. Cavellero, p. 152, Ex. 81.) A single charge for $12,000 was made on the 3722-699 account and some payments were made. (*Id*. at 173-181.) Several charges and payments were made on the 3727-107 account. (*Id*. at Ex. 81.) Also, Plaintiff and Brad Bender were acquainted. They were friends and, later in 1998, business partners running Olde Village Telecommunications Ltd. (Doc. 77, Dep. Stephen H. Sweitzer, pp. 21, 34-49, Ex. 1-2.)

**Communications Involving the "3722-699" Account**: According to Amex, on February 1, 2001, Sweitzer contacted Amex in regards to the 3722-699 account. (Doc. 76, ¶ 12.) Amex's contemporaneous business records indicate that Sweitzer stated that he hadn't opened the account and that he wanted his name off the account for future charges, but would accept responsibility for past charges. (*Id*. at ¶ 15; Doc. 77, Dep. Veronica M. Cavallero, pp. 76-77, 107, Ex. 55.) Sweitzer testified that he didn't have a conversation with Amex on February 2, 2001. (Doc. 77, Dep. Stephen H. Sweitzer, p. 148.) In August 2001, Sweitzer applied for an American Express Corporate Optima credit card account, which was unrelated to the two disputed accounts. (Doc. 1, Complaint, Ex. A.) The application was denied. A month later, he received a quarterly statement for the 3722-699 account. (Doc. 1, Complaint, Ex. B.) Plaintiff's Amended Complaint alleges that he then inquired from Amex the following day about the account opened in his name. (Doc. 10, p. 4, ¶ 11.) On December 20, 2001, Amex sent Sweitzer a notice indicating that he had accepted

4

liability for the 3722-699 account pursuant to the February 1, 2001, conversation. (Doc. 1, Complaint, Ex. C.) The notice stated that although he complained that he did not open the account, he indicated that it was opened by his employer and that he agreed to accept responsibility to keep it opened. (*Id.*) Amex sent a second notice to Plaintiff on January 8, 2002, indicating that he had accepted liability for the 3722-699 account. (Doc. 1, Complaint, Ex. F.)

On November 9, 2002, Dun & Bradsheet Receivable Management Services ("D&B") sent Sweitzer a letter indicating its intent to collect past due debt on the 3722-699 account in the amount of $11,511.10. (Doc. 1, Complaint, Ex. P.) On the same day, Sweitzer sent a facsimile transmission to Jennifer Massey at D&B to inform her that he was a victim of identity theft. (*Id.* at Ex. Q.) On November 27, 2002, United Recovery Systems Inc. (Amex's collections agent) attempted to collect on the same account for the same amount. (*Id.* at Ex. S.) Plaintiff received a notice from Amex, on December 3, 2002, stating that Amex would cease its collections efforts on the 3722-699 account. (*Id.* at Ex. T.) Amex also informed Mr. Sweitzer that it would invoke other remedies available under the law. (*Id.*) The Amended Complaint alleges that although Sweitzer contacted Amex the following day informing them that his identity was stolen, an Amex representative ("Jackie") called him on December 11, 2002, and instructed him to pay the balance on the 3722-699 account. (Doc. 10, Amended Complaint, pp. 8-9; Doc. 1, Complaint, Ex. U-V.)

**Communications Involving the "3727-107" Account**: On December 21, 2001, Amex sent Sweitzer a letter that acknowledged the 3727-107 account dispute and stated that Amex would remove his liability from the account and take the necessary steps to remove the account from the credit bureau report. (Doc. 1, Complaint, Ex. D.) The following day, United Recovery Systems sent Sweitzer a letter indicating a balance of $17,493.91 outstanding on the same account and that it was attempting to collect on the debt. (Doc. 1, Ex. E.) On January 11, 2002, Amex sent Plaintiff another letter indicating that they had instructed the credit reporting agencies to delete all information relating to the 3727-107 account. (*Id*. at Ex. G.) However, on January 21, 2002, United Recovery Systems, Inc. sent Plaintiff another letter indicating a balance of $17,952.19 was due on the 3727-107 account and that it was attempting to collect on the debt. (*Id*. at Ex. H.) Two days later, Plaintiff sent a facsimile transmission to Mark Ellerby at United Recovery Systems to request United to cease contacting him to collect on the 3727-107 account. (*Id*. at Ex. I.)

**Numerical Identifiers and Correspondence in 2003**: Amex "scrambles" account numbers as well as other numerical identifiers for security reasons. (Doc. 77, Dep. Richard LeFebvre, pp. 128, 186; Doc. 77, Dep. Stephen R. Reger, p. 23.) Thus, several different numerical identifiers were used in relation to Plaintiff's disputes. (*Id*. at 74-75.) The confusion stemming from the numerical identifiers appears to be most apparent in 2003 when Amex's representatives sent Sweitzer conflicting

6

notices and responses. On July 11, 2003, Sweitzer demanded that Amex contact

Trans Union, Experian, and Equifax and remove all Amex activity associated with

his profile. (Doc. 1, Complaint, Ex. BB, p. 2.) He also demanded that Amex extend a

$1 million line of credit to him as a good faith gesture. (*Id*.).  Mr. J. Hamilton, or an

Amex's Credit Bureau representative on his behalf, sent two letters to Plaintiff on

July 30, 2003, indicating that Amex had requested that the credit reporting agencies

delete all information relating to Mr. Sweitzer for account numbers "3737-269974-

84000" and "3728-485176-51008." (*Id*. at Ex. CC.) These two accounts do not appear

to have any relation to the two disputed accounts. The evidence indicates that these

two accounts were older Amex accounts opened in 1990 and 1993. (Doc. 87, Dep.

Teresa M. Iwanski, Ex. 12; *see also* Doc. 84,Dep. Tina Sapere, Ex. 2.) On August 5,

2003, Mr. Sweitzer sent a letter to J. Hamilton to indicate that he would be seeking

legal recourse. (Doc. 1, Complaint, Ex. DD.) He copied Stanley Willis, who appears

to have been his attorney of record at that time. (*Id*.; Doc. 77, Dep. Stephen H.

Sweitzer, p. 204-205.) Two days later he acknowledged receipt of the two July 30th

letters and reiterated his demand for an extension of credit from Amex. (Doc. 1,

Complaint, FF.) On August 21, 2003, R. Reardon notified Sweitzer that he advised

the collection agency to cease all collection efforts on the 3722-699 account. (*Id*. at II.)

Then on August 29, 2003, Mr. Hamilton notified Sweitzer that Amex uses Customer

Reference Number "055533673015376772" when furnishing information to credit

reporting agencies for the 3722-699 account. (*Id.* at Ex. KK.) He also indicated that Amex had requested that the credit reporting agencies delete all information for that reference number. (*Id.*)

**ACDV and Related Forms:** Automated Consumer Dispute Verification (ACDV), Consumer Dispute Verification (CDV), and similar forms are triggered by raising a dispute with a credit bureau or credit reporting agency. (Doc. 77, Dep. Stephen R. Reger, p. 23; Doc. 84, Dep. Tina Sapere, p. 40; Doc. 86, Dep. Anne Fortney, p. 177-178; Doc. 87, Dep. Teresa M. Iwanski, p. 20.) The credit bureau is the party that forwards the forms to the furnisher of credit. (*Id.*) This indicates to the furnisher that there is a person disputing an item reported to the credit bureau. (*Id.*) Plaintiff's Amended Complaint alleges that Amex received notice from the credit reporting agencies in March 2002. (Doc. 10, p. 21, ¶ 106.)

The evidence relating to when representatives of the three credit reporting agencies involved in the current action learned that the credit card debts were disputed and whether dispute related forms were sent to Amex is as follows.

**Trans Union**. Stephen R. Reger testified as a representative of Trans Union. (Doc. 77, Dep. Stephen R. Reger.) He testified, and other evidence shows, that Plaintiff contacted Trans Union on February 26, 2002, concerning the two Amex accounts and a consumer verification form was sent to Amex. (*Id.* at p. 26-44, Ex. 4.) Amex responded to Trans Union indicating that it should **delete** the **3727-107**

**account** (reference number "0522-3415-0013-3011-32"), which Mr. Reger testified was done on March 13, 2002. (*Id*. at 31-36, Ex. 5.) Amex responded sometime before March 13, 2002, and indicated to Trans Union that it had **verified** the **3722-699 account** (reference number "0555-3367-3015-3767-72"). In other words, unlike the 3727-107 account, Trans Union did not receive any instruction to delete the 3722-699 account. (*Id*. at 40-41, Ex. 6.) Trans Union sent Mr. Sweitzer a disclosure containing Amex's response to the disputes. (*Id*. at Ex. 7.)

**Experian**. Teresa M. Iwanski testified as a representative of Experian. (Doc. 87, Dep. Teresa M. Iwanski.) She testified that Experian received a notice from Plaintiff on approximately March 2, 2002, disputing the two Amex accounts as incorrect. (*Id*. at 17, Ex. 9.) Experian's disclosure log indicates that Plaintiff's correspondence with the credit bureau was on February 28, 2002. (*Id*. at 41, Ex. 2.) Ms. Iwanski also testified that Experian will notify the furnisher if a consumer disclaims ownership of an account. (*Id*. at 24.) Thus, there is circumstantial evidence that in March 2002 Experian sent Amex a notice that Sweitzer disputed the debt. Ms. Iwanski further testified that Experian received a dispute letter dated June 18, 2004, from Sweitzer. (*Id*. at 18, Ex. 10.) She did not ascertain when the letter was received. (*Id*.)

**Equifax**. Tina Sapere testified as a representative of Equifax. (Doc. 84, Dep. Tina Sapere.) She testified that Equifax received a notice of dispute from Plaintiff on

June 24, 2004, and Amex responded on June 29, 2004. (*Id*. at 53, Ex. 4.) Amex's

response instructed Equifax to delete the disputed account: account 3727-107

(reference number "052234150013301132"). (*Id*. at 53-54.) She further testified that

the deleted account was the only dispute that Plaintiff made directly to Equifax. (*Id*.

at 52, 54-55.)

**Plaintiff's Death**: On August 14, 2006, Amex filed a suggestion of death upon

the record. (Doc. 92.) Plaintiff's Death Certificate indicates that he died on May 31,

2007. His parents, Darylene and Thomas Sweitzer, were named co-administrators of

his estate. (Doc. 94.) They moved the Court to substitute parties and to proceed with

Plaintiff's federal statutory claim and state law claims for negligence and

promissory estoppel. (Doc. 94, p.1.) They contend that these claims survive

Plaintiff's death. (Doc. 94.) Defendant American Express filed a response, to which

the parents co-administrators replied. (Docs. 95, 96.)

**C.**     **Summary Judgment and Rule 25(a) Standards**

Summary judgment is governed by Rule 56(c) of the Federal Rules of Civil

Procedure.  It provides:

> The judgment sought shall be rendered forthwith if the pleadings,
> depositions, answers to interrogatories, and admissions on file,
> together with the affidavits, if any, show that there is no genuine issue
> as to any material fact and that the moving party is entitled to
> judgment as a matter of law.

"[T]his standard provides that the mere existence of *some* alleged factual dispute

between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986) (emphasis in original); *See also Kendall v. The Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."*Anderson*, 477 U.S. at 247-248. The purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. *See Lashlee v. Sumner*, 570 F.2d 107, 111 (6th Cir. 1978). In a motion for summary judgment the moving party bears the "burden of showing the absence of a genuine issue as to any material fact, and for these purposes, the [evidence submitted] must be viewed in the light most favorable to the opposing party." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970) (footnote omitted). Inferences to be drawn from the underlying facts contained in such materials must be considered in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962); *Bell v. United States*, 355 F.3d 387, 392 (6th Cir. 2004).

If the moving party meets its burden and adequate time for discovery has been provided, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient; there must be evidence on which the jury could reasonably find for the opposing party. *Anderson*, 477 U.S. at 251 (quoting *Improvement Co. v. Munson,* 14 Wall. 442, 448 (1872)). As is provided in Fed. R. Civ. P. 56(e):

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Accordingly, although summary judgment should be cautiously invoked, it is an integral part of the Federal Rules which are designed "to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327 (internal citation omitted.)

Rule 25 of the Federal Rules of Civil Procedure governs the substitution of parties. It provides that:

> If a party dies *and the claim is not extinguished*, the court may order substitution of the proper parties. A motion for substitution may be made by any party or by the decedent's successor or representative. If the motion is not made more than 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed.

Fed. R. Civ. P. 25(a)(1) (2007) (emphasis added).[1]

**D.     Discussion: Plaintiff's FCRA Claim**

Plaintiff's Amended Complaint ("complaint") alleges that Amex violated

section 623(b) of the Fair Credit Reporting Act (15 U.S.C. § 1681s-2(b)). (Doc. 10,

Amended Complaint, pp. 19-21.) The complaint also alleges that Defendant Amex is

a furnisher of data, a consumer may bring a private action against a furnisher, and

that Amex received notice that Plaintiff disputed the completeness and accuracy of

the charges on accounts opened in his name from Plaintiff and the credit reporting

agencies. (Doc. 10, pp. 19-21.) The complaint further alleges that Amex failed to

conduct an adequate investigation, failed to promptly investigate and report the

results of the investigation, continued to report the same misleading information,

and that, as a result, Plaintiff suffered damages. (*Id* at 21.) Defendant Amex argues

that the Court should grant it summary judgment because 15 U.S.C. §1681s-2(b) did

not create a private right of action as explained in a recent ruling from the Northern

District of Ohio and that the FCRA's statute of limitations bars Plaintiff's §1681s-2(b)

claim. (Doc. 75, pp. 9-13.) In its motion in opposition to substitution of parties, Amex

also argues that the claim did not survive Plaintiff's death. (Doc. 95, pp. 9-11.)

---

[1] Rule 25 of the Federal Rules of Civil Procedure was amended in 2007 to reflect
stylistic changes. This does not have any effect on the parties' arguments or the Court's
analysis. *See* 7C Charles Alan Wright et al., <u>Federal Practice & Procedure</u> § 1951 (3d ed.
2007).

The majority consensus among the courts that have addressed the issue is that 15 U.S.C. § 1681s-2(b) created a private right of action by a consumer against a data furnisher. *See generally Stafford v. Cross Country Bank*, 262 F.Supp.2d 776, 783-784, 783 n.4 (W.D. Ky. 2003). The Sixth Circuit stated, albeit in an unpublished opinion, that 15 U.S.C. § 1681s-2(b) created a private right of action by a consumer against a data furnisher. *Bach v. First Union Nat. Bank*, 149 Fed. Appx. 354 , 359-360 (6th Cir. 2005) ("While a consumer cannot bring a private cause of action for a violation of a furnisher's duty to report truthful information, a consumer may recover damages for . . . violation of 15 U.S.C. §1681s-2(b)(A)-(D).") (citing *Stafford*, 262 F.Supp.2d at 782-783). Thus, the Court is not convinced that it should follow the Northern District of Ohio, which adopted the minority position. See *Zamos II v. Asset Acceptance, LLC*, 423 F.Supp.2d 777, 787-788 ) (N.D. Ohio 2006) (following the minority position).

The FCRA has a two year statute of limitations.[2] *TRW Inc. v. Andrews*, 534 U.S. 19, 22 (2001); *Hahn v. Star Bank*, 190 F.3d 708, 713-714 (6th Cir. 1999). An action for violation of §1681s-2(b) must be brought:

> [W]ithin two years *from the date on which the liability arises*, *except* that where the defendant has *materially and willfully* misrepresented any

---

[2] The statute of limitations was amended in December 2003, effective March 31, 2004. See P.L. 108-159 §2; 15 U.S.C.A. §1681p (1998, Supp. 2007). This Order discusses the §1681p provision effective at the time of any alleged violation that requires a statute of limitations analysis.

> information required . . . to be disclosed to an individual and the
> information so misrepresented is material to the establishment of the
> defendant's liability to that individual . . . the action may be brought
> at any time within two years after discovery by the individual of the
> misrepresentation.

15 U.S.C. §1681p (emphasis added). "Congress provided in the FCRA that the

two-year statute of limitations runs from 'the date on which the liability arises,'

subject to a single exception for cases involving a defendant's willful

misrepresentation of material information." *TRW Inc.*, 534 U.S. at 28. Thus,

generally, liability for a 15 U.S.C. §1681s-2(b) violation arises 30 days after the

furnisher of information does not comply with its obligations outlined in §1681s-

2(b)(1)(A)-(D). *See* 15 U.S.C. §§1681s-2(b)(2), 1681i(a)(1)-(2); *Briley v. Burns Int.*

*Safetohire.com, Inc.*, 78 Fed.Appx. 481, 484 (6th Cir. 2003) (unreported).

Before the Court considers whether the statute of limitation bars Plaintiff's

claims, it should make a more basic inquiry. That is, a §1681s-2(b)(1) violation is

triggered only upon a consumer reporting agency providing notice to the furnisher

of information. *See* 15 U.S.C. §1681i(2)(A) ("the agency shall provide notification of

the dispute to any person [i.e. the furnisher] who provided any item of information

in dispute"); 15 U.S.C. §1681s-2(b)(1) ("After receiving notice pursuant to 1681i(a)(2)

. . . with regard to the completeness and accuracy of any information provided to a

consumer reporting agency, the [furnisher] shall [perform the obligations in (A)-

(D)]"); *Downs v. Clayton Homes, Inc.*, 88 Fed.Appx. 851, 853-854 (6th Cir. 2004)

(unreported) ("the plaintiff must show that the furnisher received notice from a consumer reporting agency, not the plaintiff, that the information is disputed"); *Lowe v. Surpas Resource Corp.*, 253 F.Supp.2d 1209, 1253-1254 (D. Kansas 2003).

Although Plaintiff has offered evidence which indicates that Amex's §1681s-2(b)(1) obligations were triggered as alleged in the complaint, the alleged March 2002 disputes are barred by the statute of limitations. Plaintiff has the burden to show that Amex received notice from a credit reporting agency of a dispute pursuant to §1681i to trigger §1681s-2(b)(1) obligations. *See Aklagi v. Nationscredit Financial*, 196 F.Supp.2d 1186, 1193 (D. Kan. 2002). Plaintiff's Amended Complaint alleges that a credit reporting agency notified Amex in March 2002 that Sweitzer disputes the 3722-699 and 3727-107 accounts. (Doc. 10, ¶¶ 24, 106.) The testimonies of Trans Union and Experian representatives indicate that Amex received notice. However, although Amex received notice from the credit reporting agencies, the alleged March 2002 violations are barred by the statute of limitations. *See Briley*, 78 Fed.Appx. at 484. Furthermore, the "willful misrepresentation" exception in 15 U.S.C. §1681p does not apply. Sweitzer received notice of Amex's response to his dispute. (See Doc. 77, Dep. Stephen R. Reger.)

Plaintiff argues that there were several discrete §1681s-2(b)(1) violations and the statute of limitations should apply individually to each one. (Doc. 80, pp. 14-24.) Plaintiff offered evidence that an ACDV form was forwarded to Amex in

16

approximately June 2004. (Doc. 84, Dep. Tina Sapere, p. 52-53, Ex. 10.) However, the same evidence also shows that Amex responded within a week and requested that the account be deleted. (*Id*. at 53-54). Furthermore, Sweitzer conceded at his deposition that he was unaware of any credit report subsequent to the deletion that contains adverse information reported by Amex. (Doc. 77, Dep. Stephen H. Sweitzer, pp. 231-233, 241, 246-247.) Therefore, although Plaintiff has offered evidence that Amex received notice of the June 2004 dispute, there was no §1681s-2(b)(1) violation. See 15 U.S.C. §1681s-2(b)(1)(D).

Accordingly, the Court GRANTS Amex's motion for summary judgment on Plaintiff's FCRA claim.

**E.** **Discussion: Plaintiff's State Law Claims**

Plaintiff alleged state law claims for defamation, negligence, and promissory estoppel. (Doc. 10, pp. 15-19.) The co-administrators conceded that they cannot proceed with the defamation claim against Amex. They acknowledge that Rule 25(a)(1) of the Federal Rules of Civil Procedure requires Plaintiff's claims to survive his death before substitution of the parties is allowed and based on O.R.C. §2311.21 his defamation claim did not. (Doc. 94, p.6, n.4.) Therefore, the Court will only address Plaintiff's negligence and promissory estoppel claims.

**1. Plaintiff's Promissory Estoppel Claim**

Plaintiff's Amended Complaint alleges that Amex sent Sweitzer a series of

letters promising to relieve him of liability for the two disputed accounts and that he reasonably relied to his detriment on these promises. (Doc. 10, p. 18, ¶¶ 90-96.) The complaint also alleges that Plaintiff did not pursue legal or remedial action because of Amex's promises. (*Id*. at ¶95.) The complaint further avers that Amex's failure to perform its promises caused Plaintiff to suffer damages. (*Id*. at ¶100.) Amex argues that Mr. Sweitzer promissory estoppel claim fails under Ohio law and is preempted by the FCRA. (Doc. 75, Memorandum in Support of Motion for Summary Judgment, p. 15.) Plaintiff did not respond to Amex's contention in its brief in opposition to Amex's motion for summary judgment. (*See* Doc. 80.)

Under Ohio law, the "elements of a promissory estoppel claim are (1) a clear, unambiguous promise; (2) reliance upon the promise by the person to whom the promise is made; (3) the reliance is reasonable and foreseeable; and (4) the person claiming reliance is injured as a result of reliance on the promise." *Weiper v. W.A. Hill & Assoc.*, 661 N.E.2d 796, 803 (Ohio App. 1995) (internal citations omitted). If there isn't a "promise," none of the remaining elements can be satisfied. *Kiel v. Circuit Design Tech. Inc.*, 562 N.E.2d 517, 521 (Ohio App. 1988).

Plaintiff hasn't offered evidence to withstand a motion for summary judgment on his promissory estoppel claim. *See Celotex*, 477 U.S. at 322. Amex's memorandum argues that there were no promises made in the correspondence except that in December 2001 and August 2003 it promised to remove Mr. Sweitzer's

18

liability on the 3727-1078 and 3722-699 accounts, respectively. (Doc. 75, p. 16.) The memorandum further contends that these two promises were kept. (*Id*.) Plaintiff did not respond. In fact, Sweitzer conceded at his deposition that he was not relying on a clear and definite promise, but on the "spirit" of the letters Amex sent to him. (Doc. 77, Dep. Stephen H. Sweitzer, pp. 169-170, 196-197.) Therefore, the Court GRANTS Amex's motion for summary judgment on Plaintiff's promissory estoppel claim.

### 2. Plaintiff's Negligence Claim

Like Defendant, the Court believes that Plaintiff shifted the theory supporting his negligence claim in response to Amex's motion for summary judgment and in support of his motion for substitution of parties. Plaintiff's Amended Complaint alleges that Amex was negligent in allowing Brad Bender—an "impostor"—to open an account in Sweitzer's name. (Doc. 10, pp. 15.) The complaint also avers that Amex negligently hired and supervised employees, ratified wrongful conduct of employees, and failed to employ reasonable procedures, which resulted in injuries to Sweitzer through identity theft. (*Id*. at pp. 15-16.) The memorandum in opposition to Defendant's motion for summary judgment advocates the theory of negligence not based on identity theft but rather on Amex's negligent attempt "to collect a debt that had already been deemed fraudulent." (Doc. 80, p. 20.) Subsequently, Plaintiff's memorandum in support of its Rule 25(a) motion to substitute parties contends that

Plaintiff's negligence claim concerns "Amex's negligent hounding of Sweitzer for debts that were not his." (Doc. 94, p. 7-8.) It also argues that Amex negligently reported thirteen different delinquent accounts, which Sweitzer did not open, to the three major credit bureaus. (*Id.* at p. 8.)

Amex is entitled to summary judgment on Plaintiff's negligence claim. Plaintiff cannot expand its negligence claim to assert a new theory in response to Amex's motion for summary judgment. *See Bridgeport Music, Inc., v. WM Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007); *Yanovich v. Zimmer Austin, Inc.*, 2007 WL 4163860, *14 (6th Cir. Nov. 21, 2007) (unreported); *Vaughn v. City of Lebanon*, 18 Fed. Appx. 252, 272 (6th Cir. 2001) (unreported). In addition, Plaintiff did not respond to Amex contention that there is no evidence to support the negligence claim. Furthermore, even after Defendant moved for summary judgment, Plaintiff did not offer a legal basis for his claim. Therefore, the Court GRANTS Amex's motion for summary judgment on Plaintiff's negligence claim.

## F. Conclusion

The Court **GRANTS** Defendant American Express Centurion Bank's motion for summary judgment on Plaintiff's FCRA, promissory estoppel, and negligence claims. The co-administrators motion to substitute parties is **MOOT**. As conceded by Plaintiff's co-administrators, Plaintiff's remaining claim for defamation was extinguished on his death.

20

The Clerk of Courts is **DIRECTED** to enter JUDGMENT for Defendant American Express Centurion Bank.

The Clerk of Courts shall remove Documents 75 and 94 from the Court's pending motions list.

The Clerk of Courts shall remove this case from the Court's pending cases list.


*/s/George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**

21